HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHANI TAHA and KWAMI TAHA, a marital community,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL O'DONNELL, MARILYN JOHNSON, as individuals and their marital communities, if any, and as agents of the TOWN OF LA CONNER, and the TOWN OF LA CONNER, WASHINGTON, a municipal corporation and political subdivision of the State of Washington,<br><br>Defendants. | No. C09-0003 JCC<br><br>ORDER |

This matter comes before the Court on Defendant Town of La Conner's motion for summary judgment (Dkt. No. 16), Plaintiffs' reply (Dkt. No. 27), La Conner's Response (Dkt. No. 36), Defendants Daniel O'Donnell and Marilyn Johnson's motion for summary judgment (Dkt. No. 21), Plaintiffs' response (Dkt. No. 52) Defendants' reply (Dkt. No. 54), Plaintiffs' motion for summary judgment (Dkt. No. 19), Defendants' responses (Dkt. Nos. 42 & 46), Plaintiffs' motion for addendum to their summary judgment motion (Dkt. No. 26), Defendant La Conner's response (Dkt. No. 55), Plaintiffs' motion for service costs

ORDER- 1
Cause No. C09-0003 JCC

(Dkt. No. 17), Defendants' responses (Dkt. Nos. 38 & 49), Plaintiffs' motion for leave to amend complaint (Dkt. No. 18), and Defendants' responses. (Dkt. Nos. 40 & 43.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Defendants' motions for summary judgment and DISMISSES Plaintiffs' case for the reasons explained herein.

### I.     BACKGROUND

This case concerns a series of political struggles in the Town of La Conner, Washington (pop. 761). There are currently seven outstanding motions in this case, most of which required separate responses from Defendants. These motions present an irregular patchwork of anecdotes concerning a string of disputes and grievances dating back to 2002. The Court has tried to reduce a stack of often contradictory and extraneous information into some kind of relevant and parsimonious body of facts, and some facts have been intentionally left out. At the center of this dispute is Plaintiff Shani Taha's employment as the interim town administrator for the Town of La Conner in 2007. In January 2007, La Conner Mayor Wane Everton learned that Town Administrator Jenny Scott would be resigning. (La Conner Mot. 2 (Dkt. No. 16).) Mayor Everton decided to hire an interim town administrator to fill the position until his term ended in December 2007, at which point a new mayor could select his or her own town administrator. (*Id.*) Mayor Everton offered the position to Ms. Taha in January 2007, and she accepted. (*Id.*) Ms. Taha began working as an interim town administrator on June 1, 2007. (*Id.* at 4.)

Ms. Taha alleges that her appointment subjected her and her husband, Kwami Taha, to an array of discriminatory treatment by Daniel O'Donnell and Marilyn Johnson, two elected members of the town council. Ms. Taha alleges that Mr. O'Donnell and Ms. Johnson stated in interviews with local media that Ms. Taha suffered a disabling conflict of interest and should not serve as the town administrator. (Compl. ¶¶ 27–28 (Dkt. No. 1).) These interviews, Ms. Taha alleges, led to the publication of a damaging story containing

ORDER- 2
Cause No. C09-0003 JCC

the Defendants' statements. (*Id.*) Shortly before Ms. Taha began working as town administrator, she claims, Mr. O'Donnell and Ms. Johnson convened a meeting of the town council for the purpose of eliminating the position of town administrator.[1] (*Id.* at ¶ 31.)

When Ms. Taha began working as town administrator, she alleges, Mr. O'Donnell made a series of "discriminatory requests and demands . . . which were designed harass [sic], vex and annoy Ms. Taha." (*Id.* at ¶ 36.) Such requests included scheduling meetings of the utilities committee, submitting interrogatories related to these meetings, and requesting that he personally administer grant funding. (*Id.*)

During an August 23, 2007 town council meeting, Ms. Taha claims that Ms. Johnson falsely stated that Ms. Taha held illicit or improper preferences and conflicts of interest with respect to various town activities, and that such preferences had caused her presentation of information to the council to be inaccurate or misleading. (*Id.* at ¶ 39.)

In November 2007, Ms. Taha claims that Ramon Hayes, the mayor-elect of La Conner, indicated to her that he intended to retain her as the town administrator when he assumed office in 2008. (*Id.* at ¶ 42.) Learning of this, Ms. Taha alleges, Mr. O'Donnell and Ms. Johnson attempted to dissuade Mr. Hayes from retaining Ms. Taha. (*Id.* at ¶ 42.) Ms. Taha alleges that on or around November 20, 2007, Mr. O'Donnell encountered Mayor-elect Hayes and told him that "Shani Taha is a fucking bitch" but he could "hire her if he wanted as he had been in the military and could get along with all kinds of people." (Pls.' Mot. 2 (Dkt. No. 19)); (Pls.' Mot. 1 (Dkt. No. 18).)

On December 17, 2007, Mr. Hayes emailed Ms. Taha to tell her that he would be openly advertising for the town administrator position rather than appointing her directly. (La Conner Mot. 7 (Dkt. No. 16).) In the email, Mr. Hayes wrote, "Shani, I encourage you very strongly to apply. I would like you to continue month to month until the position is filled. I admire you and need your help to get this new administration up and running."

---

[1] Despite Defendants' efforts, the position was not abolished.

ORDER- 3
Cause No. C09-0003 JCC

Before the interview process began, Ms. Taha resigned her position and decided not to reapply. (La Conner Mot. 9 (Dkt. No. 16).)

Mr. and Mrs. Taha are African-American. (*Id.*) When Ms. Taha first decided not to seek appointment to the town administrator position, she did not believe that race was a factor in the treatment she had received. (*Id.* at 17.) When she started to "put all the pieces together" with an attorney, however, "it started to look like race was a factor." (S. Taha Dep., 197:19–198:1 (Dkt. No. 16-3).) Ms. Taha now brings claims for violation of 42 U.S.C. §§ 1981, 1983 & 1985, and a variety of state-law claims, including defamation, invasion of privacy, intentional infliction of emotional distress, refusal to hire in violation of RCW 49.60.180(1), wrongful discharge in violation of RCW 49.60.180(2), wrongful discrimination in violation of RCW 49.60.180(3), wrongful discharge in violation of public policy, and negligence. (Compl. ¶¶ 61–91 (Dkt. No. 1).)

## II.    APPLICABLE LAW

Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the nonmoving party, the Court determines there are no genuine issues of material fact. FED. R. CIV. P. 56(c)(2). There is no genuine issue of fact for a trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must inquire into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party

ORDER- 4
Cause No. C09-0003 JCC

fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

### III. DISCUSSION

### A. Section 1983 Claims

There are two essential elements to any § 1983 claim: (1) the defendants acted under color of law, and (2) their conduct deprived the plaintiffs of a constitutional right. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). The Court first considers whether or not Plaintiffs have articulated the deprivation of a constitutional right. Although the Tahas make several claims regarding a variety of constitutional rights, each of these arguments fails, as explained below. Given the Plaintiffs' failure to articulate a constitutional right, the Court need not consider whether Defendants acted under color of law.

#### 1. Deprivation of Property Interest

Ms. Taha argues that she had a property interest in the interim town administrator position, which was offered to her by the mayor and which she accepted. (Pls.' Resp. 9 (Dkt. No. 52).) Ms. Taha argues that Mr. O'Donnell and Ms. Johnson deprived her of this property interest in three ways: 1) going to the press to criticize Ms. Taha, 2) convening a meeting to consider abolishing the town administrator position, and 3) conducting the meeting to abolish the town administrator position. Ms. Taha offers no legal support, however, for the contention that she did indeed have a protected property interest in her job. In fact, Ninth Circuit law shows that she did not.

In *Guy v. Mohave County*, 701 F.2d 73 (9th Cir. 1982), two sheriff's deputies filed suit against their employers after having been terminated without the requested termination hearing. The court held that because the deputies served at the pleasure of the appointing authority, their employment could be terminated at will. *Id.* at 77. Termination of at-will employment did not deprive the deputies of a property interest sufficient to guarantee them Fourteenth Amendment due-process rights. *Id.*

ORDER- 5
Cause No. C09-0003 JCC

Ms. Taha's situation is the same as the deputies in *Mohave County*. Ms. Taha does not dispute that the town administrator serves at the pleasure of the mayor, and is therefore an at-will employee. (Defs.' Rep. 7 (Dkt. No. 54).) Thus, even if Ms. Taha had been *dismissed* from her position, she would not have a protected property interest. The fact that she resigned and chose not to reapply for the position makes her claim even weaker. The Court finds that Ms. Taha has failed to articulate a protected property interest.

### 2. Deprivation of Liberty Interest

Ms. Taha argues that defamation by Mr. O'Donnell and Ms. Johnson deprived her of a protected liberty interest. (Pl.'s Resp. 10 (Dkt. No. 52).) To establish the deprivation of a liberty interest due to government defamation, courts employ the "stigma-plus" test articulated in *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002). "Under that test, a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of 'some more tangible interest[] such as employment,' or the alteration of a right or status recognized by state law." *Id.* (emphasis in original). *Ulrich* further stated that in order to demonstrate denial of employment after a voluntary resignation, a plaintiff must show that she sought the benefit of rehire. *Id.* at 983. Defendants argue that in resigning her position and declining to reapply, Ms. Taha did not seek the benefit of rehire, and cannot claim that she was deprived of a liberty interest. The Court agrees.

Ms. Taha disagrees with the Defendants' application of *Ulrich*. She argues her failure to seek the benefit of rehire is not so clear-cut: "The position taken by the defesne [sic] here is semantic." (Pl.'s Resp. 10 (Dkt. No. 52).) Ms. Taha argues that the Defendants did indeed deprive her of a liberty interest, "to the extent the false accusations and statements affected her overally [sic] reputation *as an administrator in a public entity*" (emphasis in original). (*Id.*) The basis for this interest, however, is murky. In the "Deprivation of a Liberty Interest" section of Plaintiffs' Response to Mr. O'Donnell and

ORDER- 6
Cause No. C09-0003 JCC

Ms. Johnson's motion for summary judgment, the phrase "liberty interest" is not mentioned once. (*Id.* at 10–11.) The closest thing to a coherent articulation of a liberty interest in Plaintiffs' brief is the following: "In other words, the actions of the Defendants here was [sic] not merely to say bad things about Ms. Taha as a person, but also to deride her sufficiently to generally impugn her ability to be employed by the town of La Conner specifically, but also, at the same time, and as a natural side effect, to impugn her ability to seek similar employment opportunities." (*Id.* at 10.) Plaintiffs fail to relate the facts of this case to a concrete, articulable constitutional right. Plaintiffs have failed to demonstrate a genuine issue of material fact; the Court finds no deprivation of Plaintiffs' liberty interests.

### 3. Free Association

The Tahas argue that Mr. O'Donnell and Ms. Johnson's criticisms of their association with a local real-estate developer amount to a violation of their right to free association. (Pls.' Resp 17 (Dkt. No. 52).) Plaintiffs offer no authority for the proposition that criticism of a business relationship is a constitutional violation. The Court finds no deprivation of Plaintiffs' free association rights.

### 4. Freedom of Speech

The Tahas argue that the Defendants' antagonism towards them stems from comments made by Mr. Taha in a candidates forum in 2005. (*Id.* at 17–18.) In retaliation, Plaintiffs claim, Mr. O'Donnell chilled their First Amendment rights by mailing a public records request to the Bonneville Power Administration in October 2005 asking for information regarding Mrs. Taha's salary. Defendants counter that even if such a request could somehow violate a party's first amendment rights, the statute of limitations on such a claim would have expired in October 2008, three months before Plaintiffs filed their claim. *See Owens v. Okure*, 488 U.S. 235, 236 (U.S. 1989); *Nieshe v. Concrete Sch. Dist.*, 127 P.3d 713, 717 (Wash. Ct. App. 2005). The Tahas concede that the comments are "remote in time," but "respectfully suggest that this was a root cause of all that was to come

ORDER- 7
Cause No. C09-0003 JCC

afterward." (*Id.* at 18.) With no authority to support a departure from the three-year statute of limitations on Section 1983 claims, the Tahas have failed to allege a deprivation of their free speech rights.

Because the Court finds that none of Plaintiffs' constitutional rights have been violated, Plaintiffs Section 1983 claims are DISMISSED.

**B. 1981 Claims**

42 U.S.C. § 1981 provides for claims alleging racial discrimination or a racially hostile work environment. The Court will address each in turn.

In cases alleging racial discrimination, courts apply the familiar McDonnell Douglas burden shifting framework. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1105–1106 (9th Cir. 2008). Under this framework, the plaintiff first must establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she applied for a job for which she was qualified; (3) she was rejected; and (4) the position remained open and the employer sought other similarly-qualified employees. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). As discussed above however, Ms. Taha resigned from the interim town administrator position before the recruiting process had even begun and chose not to reapply. (La Conner Mot. 9 (Dkt. No. 16).) Therefore, Plaintiffs cannot meet either part (2) or (3) of the prima facie test, and their racial discrimination claims fail.

To establish a prima facie case for a hostile-work-environment claim, Ms. Taha must raise a triable issue of fact as to whether (1) the Defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Id.* at 1108–1109. Plaintiffs' attempts to ascribe a racial basis to Defendants' actions are unsuccessful.

ORDER- 8
Cause No. C09-0003 JCC

First, Plaintiffs refer to conversations that occurred in 2002 and 2003 between a Mr. Kaguras and Mr. Taha, in which Mr. Kaguras used racial epithets. (Pls.' Resp. 12 (Dkt. No. 52); Pls.' Resp. 2–3 (Dkt. No. 27).) Mr. Kaguras is not a defendant in this action, however, and whatever comments he may have made cannot provide a basis for Plaintiffs' claims. Further, the statute of limitations on such statements expired long ago. *See Owens v. Okure*, 488 U.S. 235, 236 (U.S. 1989); *Nieshe v. Concrete Sch. Dist.*, 127 P.3d 713, 717 (Wash. Ct. App. 2005).

Second, Plaintiffs claim that racial animus motivated the October 2005 letter to the Bonneville Power Administration concerning Ms. Taha, as well as requests for information from Ms. Taha, and a challenge to Ms. Taha's credentials during her time as interim town administrator. (Pls.' Resp. 20 (Dkt. No. 27).) But Plaintiffs have failed to allege even a hint of racial motivation for any of these actions. The closest thing to an articulation of such a motivation comes from Ms. Taha's deposition: "There had to be a reason for all this [hostile treatment] . . . and I believe racial factors were an issue. We were the only two black adults in the Town of La Conner. Maybe they were afraid we were going to open the doors to more black people moving into the Town of La Conner. I don't know." (Shani Dep. 199:5–13 (Dkt. No. 21-1).) Plaintiffs offer no evidence for these suspicions. The Tahas have failed to demonstrate a genuine issue of material fact that any of the Defendants' actions had a racial basis.

Accordingly, Plaintiffs' § 1981 claims are DISMISSED.

**C. Section 1985 Claims**

42 USC § 1985(3) provides a cause of action for suits alleging a conspiracy to deprive a person of equal protection of the laws. Plaintiffs must show some racial, discriminatory animus. *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 829 (U.S. 1983). For the reasons mentioned above, Plaintiffs have failed to allege any

ORDER- 9
Cause No. C09-0003 JCC

discriminatory animus. The Tahas have failed to demonstrate a genuine issue of material fact indicating that Defendants engaged in a racially discriminatory conspiracy.

Accordingly, Plaintiffs' § 1985 claims are DISMISSED.

## D. State-law claims

Plaintiffs' remaining claims are state-law claims and do not come under the Court's original jurisdiction. The only possible basis on which the Court could exercise jurisdiction over these claims would be under federal supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–727 (U.S. 1966), the Supreme Court established a standard for dismissal of state-law claims: "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." This rule is not mandatory, but merely recognizes that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (U.S. 1988). The Court has dismissed all federal claims, and sees no compelling reason to decide the state-law claims here. Accordingly, Plaintiffs state-law claims are DISMISSED without prejudice.

## E. Motion to Amend Complaint

Fed. R. Civ. P. 15(a) states that a court should freely give leave to amend pleadings when justice so requires. However, a court may deny leave to amend for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962).

ORDER- 10
Cause No. C09-0003 JCC

Plaintiffs move to amend their complaint to add 1) allegations of gender and marital status discrimination, and 2) the term "and others" in the allegations of conspiracy. (Pls.' Mot. 1 (Dkt. No. 18).) Plaintiffs argue that the amendment to include allegations of gender discrimination is warranted because in a deposition of Mayor Hayes in January 2010, Plaintiffs learned that Mr. O'Donnell told then Mayor-elect Hayes that "Shani Davis is a fucking bitch" and that Hayes could "hire her if he wanted as he had been in the military and could get along with all kinds of people." (*Id.* at 2.) Plaintiffs argue that the amendment to include allegations of marital status discrimination is warranted because "further discovery and review of source documents reveal[ed]" that Mr. Taha was criticized for his use of a property tax exemption because he was married to Ms. Taha. (*Id.* at 3.) Plaintiffs argue that the amendment to include the phrase "and others" in allegations of conspiracy is warranted because later discovery has revealed that Mr. O'Donnell "spearheaded a group of actors" who "actively sought to besmirch and smear" those who disagreed with them. (*Id.*) When Mr. Taha declined to align himself with Mr. O'Donnell, one of these actors, Mr. Kaguras, warned Mr. Taha that Mr. O'Donnell was "checking him out" and questioned Mr. Taha about the use of the word "nigger." (*Id.*)

The Court finds that amendment of Plaintiffs' complaint would be futile. The gender discrimination claim is based solely on a second-hand account of a single comment. (*Id.* at 2.) Ninth Circuit precedent states that meager evidence such as one isolated comment cannot survive a motion for summary judgment. *See Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991). The marital status discrimination claim is based solely on a public records request that occurred in October 2005. (Defs.' Resp. 5 (Dkt. No. 43).) Such claims carry a three-year statute of limitations. *Owens v. Okure*, 488 U.S. 235, 236 (U.S. 1989); *Nieshe v. Concrete Sch. Dist.*, 127 P.3d 713, 717 (Wash. Ct. App. 2005). Plaintiffs brought their complaint in January 2009, and are therefore barred from suing for actions that occurred in 2005. Plaintiffs offer no reason why their conspiracy

ORDER- 11
Cause No. C09-0003 JCC

claim could not have been brought earlier. As with each of Plaintiffs' other claims, it is completely unsupported by legal authority. The Court will not permit Plaintiffs to employ yet another meritless argument to forestall the dismissal of their case.

Plaintiffs' motion to amend is DENIED. (Dkt. No. 18.)

**F.  Motion for Addendum**

Plaintiffs move for an order allowing Plaintiffs' summary-judgment motion under 42 U.S.C. §1983 to be supplemented by consideration of Plaintiffs' claims for defamation. (Dkt. No. 26.) Because the Court is dismissing Plaintiffs' state-law claims, this motion is STRICKEN as MOOT.

**G.  Motion for Service Costs**

Fed. R. Civ. P 4(d) states that if a defendant fails to waive service without good cause, a court must impose the expenses incurred in making service and the expenses, including attorney's fees, of any motion required to collect those services. Plaintiffs argue that their demand letters to Defendants were not returned. (Pls.' Mot. 2–3 (Dkt. No. 17).) Plaintiffs' attorney requests expenses of $1262.82, including four hours of his time, at $300/hour. (*Id.* at 6.)

Defendant Town of La Conner argues that it should not be required to pay service expenses for two reasons. First, Plaintiffs never requested that the Town of La Conner waive service. (Def.'s Opp. 4 (Dkt. No. 38).) Second, Fed. R. Civ. P. 4(j) exempts local governments from the waiver process. Plaintiffs fail to offer a reply to the Town's opposition brief. The Court finds that Plaintiffs failed to comply with Fed. R. Civ. P. 4(d)(1), and that they are not entitled to recovery of expenses from the Town of La Conner.

Mr. O'Donnell and Ms. Johnson also argue that Plaintiffs failed to provide evidence that they complied with Fed. R. Civ. P. 4(d)(1). (Def.'s Opp. 3 (Dkt. No. 49).) Plaintiffs' motion states only that they mailed "original process consisting of summons and complaint," but none of the other requirements of Fed. R. Civ. P. 4(d)(1). ((Pls.' Mot. 2

ORDER- 12
Cause No. C09-0003 JCC

(Dkt. No. 17).) Plaintiffs fail to offer a reply to dispute the insufficiency of their waiver request. The Court finds that Plaintiffs failed to comply with Fed. R. Civ. P. 4(d)(1), and that they are not entitled to recovery of expenses from Mr. O'Donnell and Ms. Johnson.

Plaintiffs' motion is DENIED. (Dkt. No. 17.)

### IV. CONCLUSION

Defendants' Motions for Summary Judgment are GRANTED. (Dkt. Nos. 16 & 21.) Plaintiffs' motion for summary judgment is DENIED. (Dkt. No. 19.) Plaintiffs' motion for service costs is DENIED. (Dkt. No. 17.) Plaintiffs' motion for leave to amend complaint is DENIED. (Dkt. No. 18.) Plaintiffs' motion for an addendum is DENIED. (Dkt. No. 26.) Plaintiffs' state-law claims are DISMISSED without prejudice. Defendants' motion to set aside Plaintiffs' response is STRICKEN as moot. (Dkt. No. 51.) The Clerk is DIRECTED to close the case.

DATED this 17th day of March, 2010.

John C. Coughenour
UNITED STATES DISTRICT JUDGE